The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. We will begin with Jacob Doe v. The University of North Carolina. Ms. Smith, pleased to hear from you. Thank you, Your Honor. Good morning, and may it please the Court. My name is Lindsay Smith. I'm with the North Carolina Attorney General's Office, and I represent the 12 defendants appellants in this appeal. I'm joined at council table by my colleague, Nick Broad. Your Honors, the plaintiff appellee in this case was accused of sexual assault by four of his fellow female students while he was a student at the University of North Carolina at Chapel Hill. He received the full panoply of procedural protections that the university provides under its sexual harassment and Title IX policies, which included a lengthy investigation into all four complaints, the opportunity to review written investigation reports, and a separate evidentiary hearing on each complaint. He was found responsible for two of the four complaints and was expelled from UNC. Let me ask you about the panoply of benefits and rights that were accorded to the plaintiff in this case. His allegations are that one of the complainants, row number two, withdrew her complaint, but he wasn't informed of that for seven months. He took a voluntary polygraph without being told what the specific charges were against him. In the row number one hearing, the complainant was allowed to leave, and her attorney was who received cross-examination in her place. And in the row number four, no cross-examination was allowed. That seems like an odd due process system of events. So, Your Honors, I'd like to take maybe each one of those in turn. With respect to what plaintiff alleges is the withdrawal of the complaints by row one and row two, what the complaint alleges is that they informed the EOC office that they did not want to move forward with the complaints. I don't think there's an allegation that they formally withdrew the complaints, but regardless, they were both complaints under the Title IX policies. And under those policies, the university has the obligation to review the reports and decide whether it needs to move forward with an investigation regardless of whether those complaints… Well, that's all well and good, but what about the party on the other side? They have no right to know that? There is nothing, as far as I'm aware, Your Honor, in the Title IX policies that requires notification to the policy… Excuse me, to the responding party that the reporting parties have decided not to participate in the proceedings. Now… Well, even if we assume that we're correct for Title IX purposes, how is that correct for due process purposes? Well, so this court, Your Honor, has clarified that what due process requires in a student disciplinary proceeding is notice of the charges, an evidentiary hearing, and an opportunity to provide a defense. And that's exactly what happened here, Your Honor. How can you provide a defense if you can't cross-examine the complaints? So this court has specifically noted that cross-examination has never been required in a student discipline context, Your Honor. Well, it may… We have said in the Virginia Tech case, you're quite right, that it's not required, but it's not forbidden either. And the question that I have is we're dealing here with an issue that turns on credibility. And a lot of these sexual assault cases are questions of he said, she said, and the rest. And if something turns on credibility, you would think cross-examination was one of the best tools we have for testing credibility. And in addition, not only is this a case that turns on credibility, but you have a situation where a sanction could be imposed that simply could ruin this plaintiff's life. We're not talking about a mild suspension or a reprimand or something. We're talking about expulsion from the university and not only expulsion from the university, but expulsion from the entire UNC system. And this is going to be on this individual's record. And so where you have a case that turns on credibility and you're imposing the most severe of all sanctions, wouldn't cross-examination have… Wouldn't it occur to you that cross-examination would be important in getting at the truth of the allegations? And the row four had no cross-examination at all. And row one, in the middle of the cross-examination, decided to leave the room and turn it over to the attorney, which is the oddest kind of cross-examination I've ever heard, to have a witness leave and have the attorney take the witness stand. And so, yeah, this is not a criminal trial and I realize that cross-examination is not invariably required, but might it not have been a good thing in this kind of situation where you're just imposing a draconian sanction and you… On a matter which turns on credibility, wouldn't your instincts have been to give the defendant in the proceeding a fair shot at cross-examination? So, Your Honor, a couple of responses to that. I think the first is that in this particular case, there was no, to the extent that there were reporting parties and witnesses who participated in the hearing, the plaintiff was not denied the opportunity to cross-examine. I mean, I think as you recognize, row one did participate in the hearing for an extensive period of time. She presented herself for questioning from the panel as well as from plaintiff's counsel. How long did the cross-examination of row one go on before row one left the room? So it's not in plaintiff's allegations in the complaint, but my understanding is that she was, she submitted a cross-examination for approximately 40 minutes before she left the hearing. We're talking about an immunity case here. Are the due process violations alleged here clearly established under our university-specific case law? And I think that's my second point to Judge Wilkinson to the questions about cross-examination, is that we are on a qualified immunity, in a qualified immunity context. And I think particularly here because of this court's holdings in the Virginia Tech case, as well as reiterating it in the Citadel case, that cross-examination is not required in the context of a student discipline proceeding, that cross-examination, that was not clearly established in this particular case. I think that the same is true for the other due process allegations or violations that plaintiff has alleged, specifically the lack of notice as well as the evidentiary concerns that the plaintiff has alleged with respect to the row four hearing. And so what we have said is – Well, what would be the circumstance under your view where the actions of the deliberative body would be so egregious that due process would be violated? I'm sorry. I'm not sure I understand the question, Your Honor. Well, if you're pursuing qualified immunity, it's not clearly established. And it almost means that we'll go forward in infinity and it will never be established. So what I'm asking you is, is there a circumstance where the actions of the deliberative body would be so egregious that due process, for instance, cross-examination or the actual appearance of the complainant would be required? So I'm not sure. So I think there are certainly instances in which due process would be violated, even in the qualified immunity context. I mean, again, this Court has established that due process requires in the student discipline context notice of the allegations against the student, a hearing, and an opportunity to provide a defense. I mean, I think if a student did not receive an evidentiary hearing, it is certainly clearly established that in this particular context, a student is required to receive an evidentiary hearing. We do not believe, however, Your Honor, that it is clearly established that cross-examination was required. But I think the other point that I would make here is that to the extent that the policy said that a plaintiff should have the ability to cross-examine witnesses who appeared at the hearing and participated in the hearing, that did occur here, Your Honors. Wouldn't it be the purpose of this Court if it saw something egregious in the process, in due process proceedings that were not clearly established that we, going forth, could say that in order to achieve due process in the future, there must be the right of cross-examination? That is correct, Your Honor. And, of course, this Court could decide at this point if it wanted to to say cross-examination is required. But I think for qualified immunity purposes, it was not clearly established at the time that this hearing occurred. Qualified immunity would protect defendants against any kind of damages. It's a defense. Qualified immunity is a defense to damages. That's correct, Your Honor. But this individual, there are some suits for the damages, I realize, which qualified immunity might kick in. But his chief interest seems to be equitable and injunctive relief. And he wants, above all, I would think, reinstatement. And in light of ex parte young, I'm not sure that, I mean, I think the qualified immunity speaks to damages. And there's a fair point on that. But the suit for equitable relief under ex parte young, I think, could still go forward. Because this was a 12B6 dismissal. And in the course, also, of deciding the qualified immunity question, even if we were to agree with you on that, Judge Floyd makes a very good point that we could underscore the fact that this kind of hearing, while it may not have been clear in these particular circumstances going forward, the idea that somebody can be expelled from an entire school system without any kind of, without the most meaningful test of credibility, it just doesn't, it doesn't make sense. You might suspend somebody for a week or reprimand somebody, and cross-examination might not be required. Because I recognize it takes some courage to come forward with these complaints, and the cross-examination is never pleasant. But we can't have rump proceedings that are ruinous to lives. That's the problem. And the district court found not only was the problem with cross-examination, but that there were problems of notice. For example, they got the date wrong. Well, that's okay, because indictments are often framed on or about. And I understand that language. But here you have someone that's saying, look, we had a consensual relationship. I think this was row one. We had a consensual relationship for a good period of time. And, but then he's researching what happened on a particular date. And he's asking himself, wait a minute, we had obviously a consensual relationship. Did I do something wrong on this particular date? And he's looking into the particular date and what they were doing. And so the district judge is saying, you know, that's problematic too. It's not just the cross-examination here. And these hearings have got to be meaningful. When somebody's life is at stake, somebody's future reputation in life is at stake. And there's clearly a liberty interest here. And I'm just, what do you have to say about the other considerations in addition to the absence or the truncated cross-examination? What do you have to say? Your Honor, I see my time has expired. Would you want to do that on rebuttal? I'd prefer, if Your Honor would permit me, I'd prefer to respond now. I'll let you do it now. You can do it on rebuttal. Which would you prefer? I'll respond now, Your Honor. Okay. I mean, I think with respect to the notice allegation, I think one thing that's very important here to know is the plaintiff never alleges that he was deprived of notice of the substance of the allegations. He was made aware that he was alleged to have had sex with Roe 1 without her consent while she was sleeping or incapacitated after having drunk alcohol at a fraternity event, particularly alcohol that was like peppermint schnapps-flavored beverages. This was a specific event that plaintiff was aware that happened on a particular night. So it was not that this was one in many different events that happened. This was a specific event. And he was aware of the substance of those allegations, Your Honor. I hear you on that, but the district court made the point that there could be one infirmity here or something that wasn't quite right, but you wouldn't condemn the whole hearing because of that. But the district court was concerned about several things that in the totality made this something less than fair. And it would seem to me that as far as the injunctive relief is concerned, this person is entitled to a full and fair hearing that gives him a chance to do what I think is his major goal, which is to at least have a shot at saying, I deserve to be reinstated. So, Your Honor, I'll make one point about the injunctive relief, and then I'll reserve the remainder of my time for rebuttal. On the injunctive relief, Your Honor, we do believe that there were not due process violations here. I mean, I think that for the ex parte young argument, that there was no ongoing violation of federal law. And because of that, because the allegations the plaintiff has alleged did not rise to the level of due process violations, that in this particular case, the official capacity claims that Your Honor references that would provide a plaintiff with the ability for injunctive relief should be entitled to sovereign immunity as well. I would like to reserve the remainder of my time for rebuttal, but I'm happy to answer any other questions that Your Honors have at this point. Let me ask my co-panelists if they have. Judge Agee? On a different topic, I do have one question. As I understand it, you made an 11th Amendment argument for immunity, is that right? And the district court did not agree with you at that point because of the language in the state statute about body politic. Was there any discussion in the district court of the RAMDEDA factors, which we would normally look at in this circumstance? No, Your Honor. In the district court, there was no discussion of those factors. And we would say, Your Honor, that there was no reason for a discussion of those factors because this court has previously held in the Huang case that the University of North Carolina is entitled to sovereign immunity as a state agent. In the Maryland Stadium Authority— So you say that's raised judicata as to the issue? No, Your Honor. We would say that it's a question of law that has been settled and established by this court already. And so for that reason, there was no reason to go through those particular factors. I would also say that to the extent that plaintiff claims that there was no discussion of the arm of the state analysis, that they've only raised that particular argument on appeal and did not raise it in the district court. Well, the district court only raised the point sui sponte, so it hadn't come up before. Correct, Your Honor. But I think what we would say is that because this court has previously decided that the University of North Carolina is a state agent entitled to immunity, there is no reason—there was no reason for the district court to go through that analysis, nor was there any reason to revisit that determination at this point. And so because of that, Your Honor, the district court is—excuse me, the university defendants were entitled to sovereign immunity on the claims, the due process claims in federal court. Now, I will say to that point about the state statute that held that the— or that states that the university is a body politic and corporate. Wong itself in a footnote specifically noted that these types of— that there's nothing in 116.3, North Carolina General Statute 116.3. I think I understand your answer. Okay. Thank you, Your Honor. If there are no other questions, I'm happy to sit down.  You've run over a little bit, but that's because of our long questions, so you're going to have your time for rebuttal. Thank you, Your Honor. Even so, you've reserved it and you're going to get it. Thank you, Your Honor. I appreciate it. Mr. Miltenberg, I'd be happy to hear from you. Good morning, Your Honors. Good morning. Andrew Miltenberg, Nassaroff Miltenberg, together with my colleague, Tara Davis, on behalf of Jacob— Can you put the microphone real close to you so we can hear? My height usually— What both sides have to say is important. Certainly. Andrew Miltenberg, together with my colleague, Tara Davis. Your Honors, we have both reserved time today, myself to address Title IX issues, Ms. Davis to address qualified and sovereign immunity issues, if that's acceptable to the bench. Well, I'd like to ask you on the qualified immunity point. We have this statement in the Virginia Tech case that qualified immunity, that cross-examination, said we have never required cross-examination. And when you look at the cases around the country on this point of cross-examination, they're all over the place. I mean, there are some circuits that require— In the Virginia Tech case, our court acknowledged the circuit split. And so you get a number of—you get something like three circuits saying cross-examination is required and three circuits saying it's not. And then even of the circuits that say it is required, they allow the hearing officer, perhaps, to do the cross-examining. So you've got a legal picture that's all over the place. And you've got this statement in the Virginia Tech case about the place of cross-examination. So as far as damages are concerned, a qualified immunity defense is a defense for damages. It doesn't have a—it's not applicable to ongoing equitable relief. But why wouldn't this be a case, given the riptides and cross-currents in the law, for qualified immunity to apply? Can I have Ms. Davis address that question, Your Honor? No, you're up here. Okay. I think that the cross-examination issue, while it appears to be in flux throughout the country, is less so on the more recent cases and especially subsequent to January 9th's decision, where we go back to the 2020 regulations for Title IX, in which a live hearing and cross-examination was an essential, critical part of the Title IX hearings. That's the regulations that we're now back at after the 2024 regulations. What they're saying is that apart from the cross-examination issue, they're saying you still got a lot. It was a fair proceeding, all things considered. That at least is their contention. They say there were interviews with plaintiffs, the reporting students, other witnesses. You got the opportunity to respond to the draft investigation reports. There were four separate evidentiary hearings, and each had a different panel. You were represented by counsel, and they say you got a lot here in terms of notice and different hearings and different boards, and you had a chance to make your views very clearly known. What do you say about that, that in its totality they're contending this was fair? Well, not only has UNC violated almost every aspect of the 2020 regulations as it relates to this matter, which is controlled by the 2020 regulations, and we're going back to those, as I mentioned, but there are a significant amount of specific instances that I want to be sure I understand where you're going. Are you saying the regulations impact qualified immunity? No. I was solely talking about cross-examination. Right, but the cross-examination issue relates to qualified immunity, doesn't it? It does, and not only does it relate to the qualified immunity, but qualified immunity, by definition, requires some amount of understanding of what all the defendants did or did not do. Right, but first, help me understand the regulations. Were they coming into this, or do they? As far as qualified immunity? Yes, sir. They only bear on qualified immunity to the extent that any particular person or defendant violated one of the regulations. But I'm asking you, Judge Agee is absolutely right. The cross-examination issue resembles qualified, I mean, bears on qualified immunity. And I'm saying, is it fair to hold these folks liable for damages? I'm not talking about equitable relief and reinstatement and expungement and the other things that I understand are important to you and that you're seeking vindication upon. I'm not talking about ongoing and your request for ongoing injunctive relief. That seems to me to be pretty close to ex parte young. But I'm talking about the immunity that you are asserting, that the other folks are asserting, with respect to the hearing. And is it fair to hold these individuals liable for damages, given the fact that the courts are all over the place and our court has said it's not invariably required? This is, I'm just wondering whether a decent course in this case would be to let your claims for equitable relief proceed, give you your shot at reinstatement, make it clear in the qualified immunity analysis that in the future this is going to be clearly established, that this kind of cross-examination should be required under circumstances akin to this one. But it's the final step. You could win a lot, but at the final step, is it fair to hold these folks liable personally for damages when the law hasn't given them clear notice? You're talking about the need for clear notice and I couldn't agree with you more. But they want clear notice too. And so, if you say, I'm sympathetic to you on the one thing, but it just seems to me that you might actually think that, hey, my opponents are entitled to clear notice too. Before they're strung up for damages, that's what I'm saying. And that doesn't cut off your, it doesn't seem to me it doesn't cut off your claims for injunctive, ongoing injunctive relief. And I would, if I were you, I would think that getting reinstated would be a paramount concern. Your Honor, the, I don't want respectfully to get too deep into the whole of suggesting just cross-examination was violated. The violations in this case, procedurally and otherwise, are so compelling and significant that yes, I do believe this may be a case where the individuals should be held responsible. These were thoughtful decisions made by individuals who, in our view, set out with a certain course in mind and they were going to achieve that course, which was the expulsion, regardless of what they did. And so it's not just one thing. Everything that was done, we believe, was done purposefully by the defendants. I took part of Judge Wilkinson's questions to be, if we were to disagree with you, as far as qualified immunity is concerned as it relates to damages, wouldn't you still want to pursue your equitable claims? Your Honor, I see my red light is on. Would you like me to answer that? Yes, please. Yes, we would still, of course, want to pursue the equitable claims. We believe money damages should still be available in this situation. Well, it's important in qualified immunity to make it clear that under these circumstances, although it may not be clearly established here in the future, it darn well is going to be clearly established that when somebody is faced with expulsion, they should be provided those procedural protections. And the 2020 Title IX regulations, which went through the Administrative Procedures Act and became law, set forth clearly what those obligations were. And the defendants, the individual defendants, either knew or should have known, they had actual knowledge of what those regulations were. And they violated them, and they violated them purposefully. And at this point in the case, if we're entitled to every plausible inference, I think that there's an entitlement to determine who did what. Because many of these actions are well beyond the pale of coincidental or accidental. Many of these actions are very thoughtful. Seven months of knowing that Row 1 and 2 withdrew their complaint, changing the school's jurisdiction for this hearing, changing the rules on an interim suspension, knowing that there was a fabricated allegation of owning a gun and threatening people in the fraternity house, all of those things the investigator and UNC's other individual defendants knew. And they proceeded on this course regardless of that. So when you look at every procedural flaw and you measure it to the 2020 regulations, it's easy to see, I believe, why each of the individuals went out of their way to damage the plaintiff. And in this situation, it can't be that there's a blanket immunity for individuals when there are situations like this where there is a real affirmative intentional wrongdoing. Well, you would still have your equitable claims and you would still have your Title IX claims in the event that the panel decided not to exercise pendant appellate jurisdiction. Yes, we do. It's not as if you're being shut off from your day in court. And I understand. I mean, I understand you think there are all sorts of irregularities. And that is a good reason to have the district court look into them. All right. If I may, Your Honor, one thing. Absolutely. You got up here to argue about Title IX. I hadn't heard you say much about it. It's not your fault. With respect to the Title IX claims, you will have an opportunity to be heard once the final order is issued, right? Yes, that's correct. All right. And so if we don't exercise pendant appellate jurisdiction, you've not lost anything. That's correct. In fact, discovery has proceeded on that aspect of the case. The defendants had asked for a stay pending the appeal, stay of discovery on the Title IX issues, and Judge Quattle-Mountain denied that. Then do you agree? I assume your position is you don't want us to exercise pendant jurisdiction. I don't think it's applicable, but I'm still happy to argue why. Just tell me yes or no. Then the answer is no. Okay. Thank you. Thank you, Your Honors. May I be seated? All right. We thank you, and let's hear from your co-counsel. Good morning, Your Honors, and may it please the Court. Tara Davis on behalf of the Plaintiff Appellee Jacob Doe. The Court has already asked Mr. Miltenberg some questions concerning immunity, and I am prepared to respond to any additional questions concerning why the entity defendants are not entitled to sovereign immunity and the individual defendants are not entitled to qualified immunity. What do you do if the precedent says the University of North Carolina is entitled to sovereign immunity? This Court has stated, and has stated pretty recently, that sovereign immunity is treated as an affirmative defense, and the burden is on the defendant claiming immunity to demonstrate its entitlement to that. Here, despite all the briefing in the district court and at the appellate level, there has been no discussion from the defendants as to how they meet the factors that are required to be demonstrated. And, Your Honor, I believe it was Your Honor, Judge Floyd earlier mentioned the Ramdita factors. There is no discussion whatsoever of how the defendants meet those factors here. It is their burden to prove, and . . . Well, let's say we were to agree with you there and found the district court's ruling on that motion to dismiss acceptable. Would there be any barrier to the UNC entity defendants to file a new motion, particularly raising our prior cases and arguing around Ramdita factors? I believe the appropriate time to do that would be as part of a summary judgment briefing, because it's also important that we be allowed an opportunity to conduct some discovery related to these issues. Right, but you're not arguing they're stopped from trying again. I don't believe so. Sovereign immunity is essentially a jurisdictional bar, so to the extent they need to raise that at another point, I believe they'd be able to do so. One point I do want to make about their argument with respect to sovereign immunity is they refer to prior cases where the university was found to be an arm of the state and essentially make the argument that they are an arm of the state as a matter of law. And all the cases that they cite, I believe, are district court cases, and the most recent of which acknowledged that the university is still required to go through those factors, and it's important to articulate how they meet each of those. And I just wanted to quote from a case from this court, Maryland Stadium Authority v. Ellerbe Beckett, Inc. That's 407 F3D255 from 2005. This court observed that the question of whether an entity is an alter ego of the state is a highly fact-intensive undertaking. Each state university must be evaluated in light of its unique characteristics. But are we surely not required to go through each of the round data factors if there's a circuit precedent that has applied or assumed sovereign immunity in similar circumstances? I believe it is still required, and there's a reason that this court has indicated. Well, but not if a precedent, in this case, I guess, Hwang, has established that sovereign immunity attaches. And I know you can say, oh, well, they just assumed without deciding, but it seemed to me that they went further than that. I'm just concerned about the precedent here. And, you know, in the long run, we can't be just concerned about this case. We've got to be concerned about the federal model. And I think the Supreme Court takes the state's ability to assert sovereign immunity very seriously and not having state institutions just hauled willy-nilly into federal court. And so there's a federalism point that's very significant. And also the Supreme Court's cases have indicated that a waiver of sovereign immunity is not to be lightly presumed because the Supreme Court takes the place of the states in our federal system very seriously. And if a change of venue motion, which seems to me a kind of a defensive mechanism, is held to be a waiver, they wanted to get into the middle district for whatever reason, but to hold that that's a waiver or just a venue question, I'm afraid that we impair state sovereign immunity for future cases, which seems to me very important not to do. Well, and I think that's precisely the reason that it is important to look at these factors and why we have this multi-factor framework at play and recognizing that the purpose of sovereign immunity is to balance situations where state entities are entitled to immunity and where they're not, recognizing that there are situations where individuals should be entitled to seek redress for wrongs. And it could be the case that they're able to meet those factors here. But at this point, at the 12B6 phase, it is their burden to demonstrate. If we've held before that UNC qualifies, why would we keep going back through that? I mean, unless you present some circumstance that's changed. So the Wayne case was decided 34 years ago, and 24 years after that in Hutto v. South Carolina Retirement Systems, this court in 2014 revisited the multi-factor framework and stated that the burden is on the defendant to demonstrate this, indicating why it's important to walk through each of those factors. The entity is constantly changing. This is a multibillion-dollar organization that is constantly evolving, and it's important to look at the entity and whether it meets the factors in terms of its funding sources, its degree of autonomy. That can change, and that's why we have this test in place to examine whether the entity is actually an arm of the state, is it essentially an extension of the state itself, or is it operating independently to the point that it should not be enjoying sovereign immunity. Again, coming back to the required test, that burden is on the defendants, and at this point they have not even addressed, let alone walked through each of those factors showing why they are entitled to immunity here. I'd like to talk a bit about qualified immunity, which I know, again, was covered earlier on, but if your honors have any specific questions about that with respect to the rights that are clearly established, and there was some discussion about the cross-examination issue, I'd like to just note that the Supreme Court in Goldberg v. Kelly stated, in almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. And that's a topic that came up earlier as well, in terms of the importance of credibility determinations in these situations, where that's the crux of the case, and that's what it comes down to, is whose account are we going to believe. So to the extent that a party has a meaningful opportunity to be heard, that means having the chance to challenge the evidence presented against you, and the way you do that is through cross-examination and through being able to present evidence. But they're saying you did have the chance to challenge it, you just didn't have the chance to challenge it in the particular way that you wanted, through cross-examination. And that may be the best way to challenge it, but in terms of the qualified immunity doctrine in the future, we have to look not just at this case, and the question we have in all these cases is, for something to be clearly established, those words mean something, that the right has to be clearly established. And I think in all of these cases, both your sovereign immunity argument and your qualified immunity argument, is a set of sympathetic circumstances that you present to us, but at the same time our long-range view has to be for the place of the states in our federal system, and for the doctrine of qualified immunity and holding fast, to the point that for damages to be imposed, they have to really on notice that they're violating clear established law. So this is the conundrum, there are circumstances that are sympathetic, but there are also doctrines that you don't want to impair, or at least I don't want to impair. So I would say that I don't think we need to impair or even necessarily change the doctrines. I think what we look to here is well-established rights to notice and an opportunity to be heard, and part of an opportunity to be heard is being able to know the evidence and respond to it. We have these precedents here, we have this Kuang precedent on the state sovereign immunity point, and then you go over to qualified immunity and we have the Virginia Tech precedent. It's not a matter of first impression for us. We've got those two precedents and they have to be dealt with. We have to deal with them. I see that my time has expired. The last point I want to make is that Matthews v. Eldridge gives us a balancing test for determining what level of processes do, and we have to look to the particular circumstances of any given case in order to figure out what process was due in that particular scenario. Here, given what was at stake, given the fact that the plaintiff was ultimately expelled from every public university in the state of North Carolina, the harm to his reputation, the revocation of his scholarship, all the other damages that will follow him through his future educational and career opportunities, that demanded more than minimum due process. I don't think we have to necessarily disrupt precedent to say that due process depends on the context, and the context here warranted these additional protections that we've discussed. Thank you very much. Ms. Smith, you've reserved some time for rebuttal and we'd be happy to hear from you. Thank you, Your Honor. I just have a couple of quick points that I'd like to make on rebuttal. I want to set aside, setting aside sovereign immunity and qualified immunity, which, again, we've argued that the defendants are entitled to. We also argue that part of the reason that the individual defendants are entitled... Can you speak up, please? I'm sorry, Your Honor. We've also argued that the reason the individual defendants are entitled to qualified immunity is not just because these alleged due process violations were not clearly established, but because they were not due process violations at all. And I wanted to make a couple of points with respect to cross-examination, and particularly the idea that because these are questions of credibility, Your Honor, that cross-examination was required. Now, I will say that Plaintiff has alleged in his complaint that credibility evidence about Row 1's credibility as well as Row 4's credibility was before both of the hearing panels. And so it was not that they had no opportunity at all to challenge the credibility of these reporting parties. It's just that at least for Row 1, they were not able to cross-examine her to the extent that they wanted to cross-examine her, and that Row 4 did not participate in the hearing, Your Honor. I also want to note quickly that Mr. Miltonberg had referenced the Title IX 2020 regulations. And to reiterate, the Title IX regulations do not set the standard for due process here. And I think the panel recognizes that the due process and qualified immunity questions are separate from the Title IX questions. But just to reiterate, even to the extent that Mr. Miltonberg, the plaintiff, alleges that these individual defendants violated the Title IX regulations, which they did not, but to the extent that he alleges that they did, that does not establish a violation of due process. As this Court recognized in the Virginia Tech case, the standard for due process in a disciplinary setting is notice of the charges, an evidentiary hearing, and an opportunity to present a defense, Your Honors. Finally, just quickly with respect to the Title IX question and this Court's pendant appellate jurisdiction. One of the reasons we believe that that question is properly before this Court, Your Honor, is that the defendant's Title IX claim rises and falls on whether or not there were procedural irregularities and due process violations here, Your Honor. So if this Court concludes that there was no due process violation, the Title IX claim must fail. And because of that, that Title IX claim is inextricably intertwined with the qualified immunity claim. In a number of cases, the precedents are on your side, but I wonder on the pendant appellate jurisdiction. Our cases have been very skeptical about the exercise of pendant appellate jurisdiction. It's just, you know, it's not flatly forbidden, but it's pendant appellate, the exercise of pendant appellate jurisdiction is not favored. So I grant that, Your Honor. I would point this Court to the 2024 decision of the Court in the elegant massage case, where the Court did recognize that pendant appellate jurisdiction was warranted. And that was a case where there were two cases before the Court. There was an interlocutory appeal of a denial of a motion for, it was a denial or grant. In the Title IX cases, there are a lot of different regulatory requirements that aren't necessarily present in the constitutional due process thing. I mean, Title IX claims and constitutional due process claims, to a certain extent, they run on separate tracks. And I can't see it getting here, because to the extent that any regulations are pertinent to the constitutional claims, they're the North Carolina systems regulations and what have you. But the factual basis of the Title IX and the due process claims may be very similar, but the legal analysis required for each of those strikes me as different. Well, Your Honor, I think that the way that they intersect here, and I see my time is up, if I may respond to Your Honor's question. The way that they intersect here is that in order to allege a Title IX claim, the defendant must prove not only procedural irregularities, but that there were particular circumstances that show an inference of gender bias. And the way that plaintiff has attempted to do that is to point to those procedural irregularities. And so essentially the way that plaintiff is attempting to show an inference of gender bias is by saying that there were due process violations. And so that is where these claims intersect, Your Honor. That's creative. Thank you, Your Honor. I have to say, thank you very much. I'd like to thank counsel on both sides of this case for what was a very ably and conscientiously presentation and oral argument. We'll come down and say hi to you, and then we'll move into our... Judge Agee and I will come down and please come up and say hello to our friend and colleague, Judge Floyd.
judges: J. Harvie Wilkinson III, G. Steven Agee, Henry F. Floyd